On 5 Wednesday, April 17, 1997, the Agency for the Prevention and Prevention of Itching      I'm here on behalf of the appellant, Dr. Anastasia Maka. Your Honors, no party has the right to be alone in court. There has to be a live controversy at every stage of any litigation. There has to be a real set of parties fighting about a real object. That ceased to be true in this case in the fall of 2012. Why did it cease to be true? Because my client agreed with Jen Sparrow that she could not bring and sustain a 256 correction of inventorship claim. We said, you're right. We said, we will not oppose your summary judgment motion. That was explicit in a letter sent on 10-31 to the court. It was explicit in our non-opposition. We even filed on November 20th of 2012 a summary judgment motion saying, because we have agreed no 256 action will lie, their declaratory judgment, which was premised on their reasonable apprehension of a 256 action, lost its jurisdictional footing. What is your best case for that proposition? I would say it's the organic seed case issued by this court in 2014, as memory serves. In organic seed, a group of organic farmers sued. They said, we're concerned that Monsanto is going to enforce its patents against us. Monsanto said, well, no, look at our website. We have a statement saying, we do not enforce our patents against incidental seed contamination. The plaintiff said, well, that's not enough. We still have an apprehension that you're going to sue us, regardless of what your website says. So the lawyer sends a letter saying, we won't sue you. And the judge of this court said, well, that's enough. Well, is that what happened here? Because I don't think that's what happened here. It seems to me in our cases, what we say is, you have to have a binding commitment not to, well, when you have a binding commitment that you're not going to sue someone, which seems to be your case, or you actually dismiss your claims with prejudice, that's enough to remove jurisdiction. But in this case, saying you're not going to oppose a summary judgment motion seems to me something far different in terms of its consequences for jurisdiction than what those cases stand for. So tell me why you think I'm wrong. Respectfully, Your Honor, here's why. In that organic seed case, that exact question was raised. Monsanto said, no, we need a binding covenant not to sue. And Judge Dyke said, no, you don't. They have made these affirmative representations in the record under judicial estoppel of their boundaries. Did the client make those affirmative representations in this record? Absolutely. And repeatedly. We said it in a letter on October 31st. We filed a state claim in the city court for Baltimore City where we said in our pleading, we do not have federal right, we do not have federal recourse. We have no right. What's in the record in this case? We're talking about this judge having determined that he had retained jurisdiction. What did you tell him? The October 31st letter went to Judge Garbus below. Our state complaint was removed to his court. It was in his court and in the record here. Our non-opposition where we said, we agree. Please, you know, we agree. Issue the summary judgment. We agree with them. We can't on this record correct to invalidate. Even though they had purloined my client's intellectual property, there was nothing we could do about it in federal court how they had done it. We said, you're right, we don't have a case in federal court. Grant the summary judgment. Your Honor, we said it in writing and explicitly. It was argued on January 24th in the oral argument. We said, look, we have agreed with this. But because we've agreed and because we are saying grant the summary judgment, their declaratory judgment, which finds its footing and their apprehension of our case also lost jurisdictional footing. This case was over. When was it over? When the summary judgment was granted or just when you made the statement that we're not going to oppose the summary judgment? It was moot and consequently over, Your Honor, on November 1st, 2012. When did the judge grant the summary judgment? The judge granted the summary judgment on the record on January 24th, 2013 where he said, and I quote, the summary judgment is granted. Not forward-looking, is granted. Okay, I'm sorry. I lost track of the dates. When are you saying that the case was mooted out? The case became moot no later than November 1st, 2012 where we filed a state court complaint conceding in a binding condition. I guess I may be wrong on this. I'm just a little confused. Are you saying that just by the fact that you came in and you said we're not going to oppose the summary judgment, are you saying that the court then lost authority to grant the summary judgment? No. I'm not saying that. We're saying do grant the summary judgment. But at that point, that case was over. And why does that matter? Because six months later… It was over at the point where you conceded? Yes. So in your view, he didn't have authority to grant the motion because the case was moot once you made this representation. No. He can grant that order because we've asked him to, but at that point, the case is over. What he can't do, Your Honor… When the case is over, how did he have authority or jurisdiction to grant the summary judgment? Because it was over for the very reason we said grant that decision. I mean, you can't deprive a court of jurisdiction and deny a ruling by saying, well, gee, you're right, but don't rule. We said, gee, they're right, rule, but at that point, the case is over. That's the point where the court rules. Certainly no later than that, Your Honor. And that's January 24, 2013. He says it on the record. I'm granting the summary judgment motion. They were alone in court. We weren't disputing it. They insisted that we go forward in a federal jurisdiction where they said, and we agreed. So why did they lose jurisdiction? Not because they didn't dispute it, not because there was no… I mean, there are plenty of summary judgment motions that are granted in cases where one side wins and one side loses. That's what happened in this case. Now, you're saying it's different because you agreed not to oppose the summary judgment motion, so that's what withdrew jurisdiction from the district court. Your Honor, there are two cases here. There's the crossing 256 cases, the correction of inventorship cases, and then there's the subsequent state tort claims that were then removed to the federal court and went forward. Two separate cases. The jurisdictional basis for the 256 case was over before we had the summary judgments even filed on the removed state claims. There has to be a jurisdictional basis for both of those cases in federal court. You cannot use the 256 claim to pony up jurisdiction for the state removed claims because it was over. Just moving on to the next issue because the clock is running. What exact date do you argue you had notice of the constructive fraud in this case? This goes to the statute of limitations. It does indeed, Your Honor. I think it depends on which patent. I think in fairness for the first patent, which is a composition of matter patent, given that they filed an application claiming that in the fall of 2006, arguably Dr. Mock was on constructive notice. I don't think that puts her on constructive notice on the second method patent, which hadn't even been applied for, much less issued. So I think the answer to that question depends on which right you're talking of specifically. All right. A minute and a half left. On jurisdiction, it's really important in our view, and forgive me if I'm hitting this too hard, that there were two separate cases. There was initial jurisdiction until the parties agreed that no cause of action would lie under 256. At that point, the 256 case was over. And that takes you to what jurisdictional basis existed for the removed state case. Can I ask you just a technical kind of question? Please. The parties agree. I mean, there is a cause of action on 256. I may be wrong on this, but it seems to me there is a cause of action. It's that no one in their right mind would bring it because it would sort of effectively invalidate the patent. Am I wrong about that? I haven't had very many cases. It's not like there's no cause of action. Your client could have brought the 256 claim. It's just in bringing that, she would have sort of resulted in both people are losers at the end of the day, right? Respectfully, no, Your Honor. This is not just the baby out with the bathwater. Under the law, although it's never been addressed by this court, but under various district court opinions, one does not have a 256 correction action if correcting the patent does not force invalidate the patent. Why not? Because 256 is a saving statute and courts do not correct to invalidate. That was Jim Sparrow's point given the record developed in the district court. We looked at that. We looked at the record and said, you're right. We said, please, Your Honor, enter the summary judgment. These crossing 256 cases are over. But there has to be more reasoning to it. If you have the wrong inventorship, the patent's invalid. It doesn't matter what else. Correct, Your Honor. To decline to challenge inventorship isn't going to somehow purify or stabilize the patent should it ever end up in litigation for infringement or something else. That taint is fundamental. Absolutely true. There was a reason we didn't sue them to correct inventorship. They sued us in a declaratory judgment. If you're declining to bring a 256 action or something else, whether you're in federal or state court, really is irrelevant to the ultimate validity of the patent that was filed. If, in fact, she is correct and has made an inventive contribution, that's a question that we never really got to. Correct. I agree with that. Nothing that happened... Then I don't understand what we're arguing about. We're arguing about jurisdiction and the fact that once the parties agreed that she had neither Wright nor Ricos from federal court, the federal court lost jurisdiction so that the state claims that had been subsequently filed in the city court for Baltimore should not have been removed absent an independent federal jurisdictional basis for those state claims, and that does not exist here under the Gunn v. Minton case. And if I may, why not? Because Dr. Maka can prevail in state court without proving federal inventorship because she has a property right under the Johns Hopkins intellectual property policy that gives her an interest even absent federal inventorship. An interest in an invalid patent. Her IP claims... What is the benefit? It doesn't look to me as if there are economic consequences. It's entirely a reputational aspect. It should be remedied by publication. Your Honor, we can't predict what's going to happen. There are no damages yet, right? No damages yet. And this patent may not be challenged and if it's challenged, it may survive. I'm sure Jen Sparrow will argue vigorously and robustly that it's a valid patent, both valid patents. So we don't know. What we know is that they took our IP. We have no right nor remedy in federal court. We agreed. We filed state claims. They remove our state claims and there's no jurisdictional basis for those state claims being in federal court. And we weren't quiet. If you prevail in the state claims, then that adds to the, per se, invalidity of the patent. No. I'm glad you asked that, Your Honor, and no one hears why. Under the IP policy, we can prevail in the state claims even shy of proving full federal inventorship status. The IP policy says intellectual property, as used here in this policy, is something of value, whether it's patentable or not. So we could build a record that shows that she makes a contribution compensable under the policy that falls shy of being full federal inventorship. That record would actually enhance the patents. But we don't know. I mean, this is a jurisdictional dispute. We have never had a substantive day in court on the merits of the dispute. Okay. You're into your rebuttal. I am. Thank you very much. Good morning, Your Honors. Good morning. John Nilsen of Arnold and Porter for the appellees. May it please the Court. From the moment that the appellant answered the complaint, the declaratory judgment complaint in the original 772 case made it very clear that she wanted to be in federal court and she thought it was the proper place for her to be. Yeah, but if this is a jurisdictional question, then why does that matter? Well, you're right. Parties cannot confer jurisdiction on each other or agree to the court's jurisdiction, and the District Court was very cognizant of that, which is why it went to great lengths to assure itself of both its independent jurisdiction over the state law claims and its supplemental jurisdiction. Now, something that has been raised can be waived, and that's this objection to what happened procedurally. Now, just to get to that issue. Now, procedurally, what happened was that this second case was filed. Oh, and let me just address one thing very quickly. There's a suggestion that was made by the appellant's counsel that from the beginning of this suit, she always made it clear that she challenged jurisdiction. That was not the case. She agreed to jurisdiction in her pleadings. She asserted an affirmative counterclaim to correct inventorship, invoking the court's jurisdiction. She threatened to file suit, which created the controversy in the first place. It was not a case of they sued us. It was a case of threatening to bring a Section 256 inventorship action. That's an A283 to 284. Nothing transpired in terms of subsequent events to change things until Genspera moved for summary judgment. There was no withdrawal of the inventorship claim. There was no change. There's no amendment to her pleadings. Now, tellingly, there's a suggestion that when Genspera first raised this issue, Dr. Maka said, oh, I agree. That's not actually correct. One looks at the docket, item 31. This is on A. Again, I'm a little confused. You may have good arguments, but I'm not sure I think this is one of them. As I said, we've established we don't waive jurisdiction. The real question, it seems to be, on that point, to be whether or not, and our case is clearly established, whether I agree with your friend or not. They clearly establish even if the plaintiff, if there is jurisdiction in the first instance, it can be mooted out by some action. Why is the summary judgment motion, they're agreeing, they're not contesting the summary judgment motion, not sufficient to withdraw jurisdiction? That's an important question. I agree with Mr. Hosey that the best case or the most pertinent case is probably the organic seed case. In that case, Monsanto said from the first, we don't intend to sue. We don't intend to sue. We don't intend to sue. That was the basis of a binding admission that created, deprived the court or said there was no controversy. Here, Dr. Maka said, we intend to sue. We want to go to trial up until the moment the summary judgment was filed. There's not a case that I'm aware of in this court's history or any other court that said you can deprive a court of jurisdiction when you see a summary judgment brief and realize, I shouldn't have brought this claim in the first place. You can deprive the court of jurisdiction to rule on a claim because you realize it was meritless to begin with. That really gets to the second bucket of jurisdictional arguments that have been made by the appellant in this case. It's very clear that a claim that it fails on the merits does not mean that when the court rules to that effect, it loses its jurisdiction. The Bell v. Hood case says that from the Supreme Court. The Steele case says that from the Supreme Court. Even when the plaintiff lacks statutory standing, it's still, the court still has power to rule on the merits. Engaged learning from this case says the same thing. In terms of the supplemental jurisdiction issue, what happened was the motion for summary judgment was brought simultaneously. Dr. Maka filed her state law claims in Baltimore. Jen Speier removed them. There was no motion to remand. Dr. Maka didn't say these don't belong in federal court. She, in fact, at the hearing on that motion to dismiss those claims, said we want to be in federal court. As a result, the district court said, well, let me analyze this issue because I want to analyze gun and I also want to analyze supplemental jurisdiction. But the court sent a letter to the parties and in the letter to the parties, this is probably as important as any document in the case, the letter in response is at A730 and A731. The court asked, Dr. Maka, Jen Speier, do you agree that I would have supplemental jurisdiction if this case were consolidated into the first case? And at this point, summary judgment, the court had said, I intend to grant that. But do you agree with this procedure whereby I will consolidate these two just to verify that I have supplemental jurisdiction over the state law claims? Dr. Maka said, yes, I agree to that. Then he said, Dr. Maka, do you want to be in federal court? Dr. Maka said, yes. Then he said, do you agree that these are the same facts and transactions for purposes of that analysis? Dr. Maka said, yes. The case proceeded through six months, seven months of fact discovery. It became clear after that fact discovery that Dr. Maka's claims were time-barred for reasons that I can discuss. At that point in time, there's a summary judgment hearing. Even at that summary judgment hearing, Dr. Maka didn't say, Your Honor, you don't have jurisdiction to consider these issues. Never. There's a claim for time-bar talking about the constructive fraud. Yes. One claim at issue. That's something that needs to be very clear. There's really no time-bar to inventorship, is there? No. That was a separate, there was no statute of limitations issue with respect to the inventorship claims. For the state law claims, there was, but the court ruled on two of the three on independent grounds. It said, you can't bring a conversion claim for theft of intangible property in Maryland. That's not addressed in the opening brief. That's the court's ruling. It said, unjust enrichment is a remedy. It's not a claim. It's a remedy for your constructive fraud claim. That's not addressed. It said, you don't have any claim against Jim Sparrow based on your theory of damages. Your theory of damages is against your former mentors, Dr. Isaacs and Dr. Denmeade. No claim against Jim Sparrow. So all that was left was a constructive fraud claim against two of the appellees, Dr. Isaacs and Dr. Denmeade, and that was time-barred. Now, with respect to date of accrual, there was a little bit of debate about that. Let's take the first patent off the table because I think your friend agreed that we could use either the 2006 date or the 2008 date. What about the second patent? So, Your Honor, I'll address the merits of that, but first, that argument was never made below. It was waived. This is a new argument. It's referenced, I think, in one sentence of a hearing. It's not in any of the pleadings below, not in any of the motion papers. This court's decisions in Goldenbridge and Sage Products make very clear you can't raise a new argument on appeal. How many sentences do you say they needed? This is what was said. The right to raise this argument? You say one sentence is not enough? Not in a hearing. Two sentences have done it? I apologize, Your Honor. This is all that was ever said with respect to this issue. At the summary judgment hearing, not in any brief, Mr. Hosey said, it's a separate patent with separate rights, Your Honor. It has value. It's a method patent. So it covers the use of the drug. The first patent is the compound of matter. The second covers the actual use of it. That's the extent of any separate argument with respect to the 648 patent. Repeatedly, the judge asked, Mr. Hosey, when did your cause of action accrue? And he was not focusing just on the 345, or 354 patent at that point in time. He was focusing on the cause of action generally, as it pertained to both patents. And repeatedly, with respect to the patent, he said, if you construct a fraud claim in 2013 and 2014, Dr. Maka's counsel said it accrued when they amended that first claim and added the composition to that claim. And that's at A51, A1601, A1602, and A60. So that was an admission over and over again    And it makes sense. So let me explain why. The 354 patent is the composition patent. The 354 patent is the composition patent. The 354 patent is the composition patent. It has the molecule, the compound, the modified Babcigargan analog. The 648 patent is a method of treatment patent. It deals with using that analog to treat various forms of cancer. Now, it's undisputed that any work that Dr. Maka did was purely on identifying the compound. No work with any methods of treating anyone, either an animal or a person, anyone, with that compound. So it really isn't a distinct issue. The wrong for her, and in Maryland, a cause of action accrues at the date and time of the wrong, the wrong for her was that initial amendment that turned a genus claim, and the genus covered a range of peptides attached to this Babcigargan analog, that turned it into a sub-genus claim. Is your position that it was not wrong to take her subsequent scientific work? Yes. So on the merits, Your Honor, and the merits were never reached, but they were fully developed in terms of expert discovery. The merits showed that the genus described in the patent and patent specification was to one of ordinary skill in the art, maybe several hundred... Well, the genus is, as it turns out from the record, to be the compound of choice. Well, it actually is a sub-genus in the claim. There are about five peptides, five compounds covered by that claim. And the patent teaches you use these two amino acids in combination. It's only a combination of two amino acids, five... You're avoiding the issue. The issue isn't going to go away. This was a specific compound. It wasn't a genus. It wasn't a sub-genus. It turns out to be the one in clinical trials, according to the record. It turns out to be a compound of choice. There are difficult questions here, which I appreciate haven't been reached. But I would think that Hopkins would be quite concerned about making sure that they've got it right. Well, Your Honor, I agree that these questions are far more difficult than the questions that led to the resolution of this case. But this court's case law makes very clear that during prosecution, a claim can be amended to be directed to a smaller genus or even a species if the genus is sufficiently defined in the specification, which here it was. Here it was very clear. Patents teach these are the amino acids that should be in the   this is a case where the second year graduate student was told which peptides to use, was told to make this specific one, and then later claimed in mentorship. And she lay on her rights for six years before she did so. Now, there's undisputed evidence that in 2008, Dr. Johns Hopkins said, I think they may have an alleged claim, the claim she now says she has. She says, I believe that I contributed to this pending patent. Johns Hopkins wrote back and said, it's not our patent any longer. It's conspiracy. Perhaps you should consult counsel. She wrote to her advisor. She said, Johns Hopkins says maybe I should consult counsel. Maybe I should do that. I agree. She did. She waited. That's exactly why Maryland's three-year statute of limitations is in effect and bars the claim. Now, I have two minutes or so left. If there's anything I can discuss before I sit down, I'd be happy to do so. Thank you. If I may, let me start with the waiver by not raising it below. That is inaccurate. If I may cite the court to page 21 of a reply brief and footnote 14 and specifically A, appendix 1109. We argued the second patent specifically and explicitly in the summary judgment briefing below. Again, the evidence is summarized in footnote 14, page 21 of our reply brief. The appendix site is A, 1109. So it wasn't just my saying an argument. Look, it's a second patent. It's a separate right, which is clearly true. It was in the briefing very specifically. On acquiescence, by the time the court had no jurisdiction and we were getting no traction with that. We tried twice. We failed twice. Giving graciously into what seemed to be inevitable is hardly acquiescence. As you pointed out, it's all beside the point because we cannot create jurisdiction any more than the court can confer jurisdiction on itself. Third, it's really important to separate the 256 cross actions and the subsequent state court claims that were removed. We said, Judge Garbus, please do enter the judgment in the crossing 256 claims. We recognized that that's over. We didn't say, gee, we don't have the jurisdiction for our state claims. There was no independent federal jurisdiction for those state claims. Finally, on the merits, I would love to try this case on the merits, but we have not had the opportunity. Thank you. Thank you. We thank the counsel in the case that was submitted.